IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES . KEEN,

    Plaintiff,

    vs.

AMY NOBLE, et al.,

    Defendants.

CV F 04 5645 AWI WMW

FINDINGS AND RECOMMMENDATIONS RE DEFENDANTS' MOTION TO DISMISS (DOCUMENT 37)

Plaintiff is a federal inmate in the custody of the U.S. Bureau of Prisons at the U.S. Penitentiary at Lompoc, California. Plaintiff brings this civil rights action against defendant officials of the U.S. Bureau of Prisons for conduct that occurred while Plaintiff was housed at the U.S. Penitentiary at Atwater. Plaintiff claims that defendants prohibited him from the free exercise of his religious belief in violation of Section 3 of the Religious Land use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §2000.[1]  Plaintiff also claims that

---

[1] Section 2000cc-1(a)(1)-(2) provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." Plaintiff also brings this action pursuant to the Religious Freedom Restoration Act (RFRA). 42 U.S.C. § 2000bb et seq. RFRA prohibits government from substantially burdening a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

1

defendants' conduct deprived him of the right to freely exercise his religion in violation of the First and Fourteenth Amendments to the U.S. Constitution.

UNDISPUTED FACTS[2]

1.  James Keen, Federal Register No. 36293-019, a federal inmate in the custody of the Federal Bureau of Prisons (BOP), was designated to U.S.Penitentiary Atwater between June 19, 2002, and May 8, 2003. When Plaintiff arrived at U.S.P. Atwater on June 19, 2002, he made himself known to Religious Services Staff as a practitioner of the Asatru faith. Declaration of Amy Noble, ¶ 2, Exh. 1.

2.  In anticipation of the opening of the U.S.P. Atwater, each of the different departments at the penitentiary prepared an Institutional Supplement, which is a local version of the national Program Statement (PS) or policy addressing each aspect of the operation of the BOP. The first version of the Institution Supplement 5360.08A, Religious Beliefs and Practices, was prepared by staff and approved on February 12, 2001. This Institution Supplement did not contain specific references to the practice of the Asatru faith. Noble Decl., ¶¶ 5, 14, Exh. 4-6.

3.  In June 2002, the institution was still receiving designations of its initial high security inmate population. Some programs in the Chapel were still under development. U.S.P. Atwater operated with a divided inmate population, which was possible because of the physical lay-out of the prison (a rectangle.) Inmates from the 'east side' did not mix with inmates from the 'west side'. Because of this type of operation, two outdoor worship areas were constructed for the inmate population to use. Noble Decl., ¶¶ 6 & 7.

4.  Plaintiff and other inmates, under the supervision of Religious Services staff, worked to complete a neutral outdoor worship area for the 'west side'. This area was to be used by several faith groups, including the Asatru group, each with a separate worship practice area.

---

[2] Plaintiff does not challenge Defendants' statement of undisputed facts. The court therefore adopts portions of Defendants's statement of undisputed facts.

Plaintiff made requests to the Religious Services Department on behalf of the Asatru practitioners for ritual items, which were granted as to the majority of requests. Noble Decl., ¶8, ¶9, Exh. 7 and 8.

  5. In October and November 2002 Plaintiff asked to possess 'runestones' as personal religious property. The Warden denied the request, based upon the existing BOP policy, PS 5360.08, Religious Beliefs and Practices, and guidance from the Religious Services staff who relied on regulations, policy and the Technical Reference Manual (TRM 5360). Noble Decl. at ¶5, ¶12, ¶13, Ex. 2, Ex. 3, and Ex. 12. Declaration of Paul M. Schultz, ¶4-5 , Ex. 1, Administrative Remedy response.

  6. Plaintiff appealed the Warden's denial, through both appropriate levels at the Region and the Central Office. Declaration of Dennis Grabrian, ¶8, Ex.2, Regional Appeal response. Declaration of Harrell Watts, ¶5, Ex. 2, Central Office appeal response.

  7. In October and November 2002 Plaintiff requested that the Institution Supplement (the local version of the national policy) be expanded to include information about the Asatru religious practices, and that because the Institution Supplement did not include a reference to Asatru and the practices permitted by the BOP, that staff give him a copy of the Technical Reference Manual (TRM), prepared by the Bureau for use by Religious Services staff in carrying out their duties in the prisons. Complaint Ex. H and Ex. J. This request was granted in part when Plaintiff was provided a section of the TRM referencing the practice of Asatru, as part of an Administrative Remedy response. Noble Decl., ¶14, Ex. 10; Complaint, Exs. H, J & K.

  8. Plaintiff appealed the Warden's release of only the section of the TRM discussing the Asatru faith, asserting his request required production of the entire TRM. He appealed through both appropriate levels at the Region and the Central Office. The limited release of the TRM was upheld. Grabrian Decl., ¶7, Ex. 1; Watts Decl., ¶4, Ex. 1.

9.  Plaintiff next submitted a written request to Warden Schultz for review of Asatru as a new religious practice and the construction of a hof in the outdoor worship area for Asatru worship Asatru was not a new religious practice, it has been part of inmate religious programming since at least the mid-1990s. Grabrian Decl., ¶10.

10.  The hof was to be in addition to the use of the sanctuary facilities in the prison Chapel. A hof is a closed building that is in an outdoor setting and used for religious practices. Chaplain Noble researched the use and function of the hof, and consulted with Asatru spiritual leaders who advised that a hof was not necessary for worship services. Noble Decl., ¶ 15.

11.  Based upon the discretionary nature of its use, and because a closed building in the outdoor worship area presented a grave security concern to the safe operation of the prison, the Warden denied the request for the construction of a hof in the outdoor worship area.  Noble Decl., ¶ 15, Ex. 11A-11C.

12. When Plaintiff appealed his requests to the Regional level, the investigation of the Administrative Remedy appeal was assigned to the regional Chaplaincy Administrator, Fr. Dennis Grabrian.  Grabrian Decl., ¶ 5, Ex. 1, 2, 3 and 4.

13.  Fr. Grabrian also provided guidance and assistance to the institution chaplains throughout the Western Region. He made staff assistance visits to U.S.P. Atwater and reviewed the Religious Services Department's Annual Report. In December 2002, U.S.P. Atwater provided the first ceremonial feast for Asatru practitioners,  which was reported to the Regional Chaplain.  Grabrian Decl., ¶ 1, 11 and 12.

14.  Asatru was not an unknown religious practice to the BOP in 2002, it had been practiced in BOP prisons since the early 1990s. The Technical Reference Manual contained a section on Asatru practice. Additions to policy and expansion of allowed religious

personal property for Asatru inmates sought by the plaintiff in 2002 have now come about. Grabrian Decl., ¶10, 2.

15. Current BOP policy, Program Statement 5360.09, Religious Beliefs and Practices, revised (12/31/2004), resulted in revisions to the TRM and Institution Supplements, including at U.S.P. Atwater. That Institution Supplement has been revised twice since plaintiff was designated there. It was updated in April of 2004 and April of 2005 and now includes specific reference to Asatru practices. The BOP now includes the use of "runes" as well as "rune cards" as personal religious property for inmates who are Asatru practitioners. Noble Decl. ¶5; Grabrian Decl., ¶ 5.

16. Federal Defendant Chaplain Amy Noble began working at U.S.P. Atwater in March of 2002 and was named a Chaplain on July 28, 2002. Noble Decl., ¶1 & 2.

17. Chaplain Noble dealt individually with inmate Keen on many issues related to inmate faith practices at U.S. P. Atwater. In reaching decisions about accommodating the faith practices requested by Plaintiff, Chaplain Noble relied upon direction from national BOP policy found in Program Statements and more specific guidance in the TRM. Additionally, she researched Asatru faith practices and consulted with Asatru gothi (spiritual leaders) recognized by the BOP. Noble Decl. ¶8, ¶12.

18. Ms. Noble investigated requests (cop-outs) and Administrative Remedy complaints filed by inmate Keen on religious issues and provided that information for the responses by the Warden or his designee. Chaplain Noble remains at U.S.P. Atwater and has continued in her mission to provide pastoral care and accommodate the free exercise of religion by all Federal inmates. Since 2003, when plaintiff left U.S.P. Atwater, the BOP Program Statement, the Technical Reference Manual, and the Atwater Institution Supplement have been changed and now include references to Asatru practices. Noble Decl. at ¶10, ¶11; Grabrian Decl. at ¶2, and ¶5. Noble Decl. at ¶5.

19. Federal Defendant Paul Schultz was the Warden at U.S.P. Atwater between October 2002 and January 2006. The Warden or his designee is responsible, among other duties, to respond to inmate Administrative Remedy complaints. Only two of Plaintiff's Administrative Remedy filings were personally responded to by Warden Schultz. The first, was the request for use of personal rune stones. In considering the Plaintiff's request, Defendant Schultz relied upon the national policy for inmate religious personal property, which allowed rune cards, rather than rune stones.  Schultz Decl. at ¶5 , Ex. 1.

20. The second was the request for recognition of Asatru as a faith practice and construction of a hof. Since Asatru was clearly a permitted practice, the denial addressed only the request for construction of the hof. Based upon research that determined this structure was discretionary in nature, and the fact the Asatru community had both an indoor and outdoor worship area, the Warden exercised his sound correctional judgement and determined the closed structure would present a security threat, resulting in a compelling government reason to deny the construction of such a structure. Schultz Decl. ¶5, Ex. 2.

21.  Federal Defendant Robert M. Haro,  was the Regional Director at the Western Region during the time period of the complaint between June 2002 and May 2003.  He retired from federal service on April 2, 2004. He did not exercise any personal decisions regarding Plaintiff, nor any of the Administrative Remedy appeals filed by Plaintiff Keen. All the Regional Office Appeal responses were signed by individuals who were delegated to sign on his behalf, in
an "acting capacity" when Mr. Haro was unavailable. These Administrative Remedy appeals, No. 282606-R1, Complaint Ex. P, and appeal No. 283004-R3, Complaint Ex. R, were not signed by him.  Grabrian Decl. ¶7, ¶8, ¶10, Ex. 1, Ex. 2, Ex. 3, Ex. 4.

22. Federal Defendant Harrell Watts,  Inmate Appeals Administrator, Federal Bureau of Prisons, Central Office, maintains his office in Washington, D.C., and is not a

1  resident of the State of California, nor was he a resident of the State of California at any time
2  during the events alleged in this lawsuit.  At all times relevant to the complaint Harrell Watts
3  was acting within the scope of his duties and employment with the Bureau of Prisons, as the
4  Inmate Appeal Administrator. Mr. Watts is responsible to review and sign the agency response
5  to the final level of inmate Administrative Remedy appeals. Mr. Watts did sign the Bureau
6  response's to Administrative Remedy Appeals filed by Plaintiff Keen. According to Defendant
7  Watts, three appeal responses were in accord with existing Bureau policy.   Declaration of
8  Harrell Watts, at ¶4. and Ex. 1, ¶5 and Ex. 2, ¶6 and Ex. 3.

9          23. Federal Defendant Sarah Qureshi, Assistant General Counsel, Federal Bureau
10 of Prisons, Central Office, maintains her office in Washington, D.C. and is not a resident of the
11 State of California, nor was she a resident of the State of California at any time during the events
12 alleged in this lawsuit. At all times relevant to the complaint Sarah Qureshi was acting within
13 the scope of her duties and employment with the Bureau of Prisons, as Assistant General
14 Counsel. Defendant Qureshi took no personal action that resulted in a correctional
15 or religious practice decision regarding Mr. Keen. Ms. Qureshi is the Rules Administrator of the
16 BOP dealing with federal rule making and amendments. Her only involvement was responding
17 to
18 correspondence sent by Plaintiff to the Central Office of the Bureau of Prisons,  regarding the
19 procedure for making a rule change. The response prepared by defendant Qureshi informed
20 Plaintiff that his request addressed agency policy, not regulations, and advised him how to go
21 about submitting a request for revision of agency policy.  She did not deny any proposal made by
22 the Plaintiff.   Declaration of Sarah Qureshi, ¶4, 7 & 9

23          24. Federal Defendant Kathleen Hawk Sawyer, Director (retired), Federal Bureau
24 of Prisons, maintained her office in Washington, D.C., and is a resident of the Commonwealth of
25 Virginia. She did not work at U.S.P. Atwater and had no personal involvement with plaintiff
26

7

Keen's incarceration or religious practice treatment while the plaintiff has been in federal confinement. At all times relevant to the complaint Kathleen Hawk Sawyer was acting within the scope of her duties and employment with the Bureau of Prisons.  Defendant Hawk Sawyer took no personal action that resulted in a correctional or religious practice decision regarding Mr. Keen.  Declaration of Kathleen Hawk Sawyer, at ¶4 - ¶6.

## QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity from suit.  As a general rule, government officials performing discretionary functions are shielded from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity is a three-part inquiry.  First, the court must consider whether the facts "[taken in the light most favorable to the party asserting the injury . . . show that the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the defendants' conduct did not violate a constitutional right, the inquiry ends at that point, and the defendant is immune.  Should a violation be established, the court must determine whether the right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201.  Finally, the court must conclude whether a reasonable officer in these circumstances would have though his or her conduct violated the alleged right. Saucier, 533 U.S. at 205.

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff's central contention is that the denial of the use of rune stones and the construction of a hof constitutes an impermissible denial of the free exercise of his religious beliefs. The facts of this case are undisputed. Plaintiff's request was denied on the ground that BOP policy did not allow for the use of rune stones and the construction of a hof at that time. Though BOP policy was later amended to allow for the use of rune stones, it is undisputed that Plaintiff was denied the use of them while he was housed at Atwater. Such a deprivation of itself, however, does not amount to a per se violation of RLUIPA. The Supreme Court, in upholding the constitutionality of RLUIPA, noted the deference that must be accorded prison officials in their attempt accommodate religious observances in the light of the need to maintain order and safety. Cutter v. Wilkinson, 544 U.S. 709 (2005). The court specifically observed that "we do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests." Id. at 721. In evaluating congressional intent, the court noted that "lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, *e.g.*, 139 Cong. Rec. 26190 (1993) (remarks of Senator Hatch). They anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order,

security and discipline, consistent with considerations of costs and limited resources.' Joint Statement S7775 (quoting S. Rep. No. 103-111, p. 10 (1993))." Id. at 722.

In order to survive the first step in the qualified immunity analysis, Plaintiff must show that the denial of the use of rune stones and the construction of a hof violated clearly established statutory or constitutional rights of which a reasonable person would have known. Specifically, Plaintiff must show that the denial of rune stones and a hof constituted a burden on his religious belief that did not further a compelling government interest and was not the least restrictive means of furthering that interest.

The individual responsible for the denial, Chaplain Amy Noble, declares that she began her interactions with Plaintiff when he arrived at U.S.P. Atwater in June of 2002. Many items were provided for the Asatru community prior to and during the period that Plaintiff was designated to Atwater. These items included a faith locker, books, music, videos, pamphlets, copies as requested, binders, ceremonial objects, herbs and trees for the outdoor area. Any of the requests made by Plaintiff were denied for correctional security reasons. Noble. Decl. ¶¶ 8- 9, 11.

Regarding the specific request for rune stones, Ms. Noble investigated and aided the preparation of the Warden's response to Plaintiff's challenge of the denial of that request. The use of rune cards was determined by agency policy and Ms. Noble relied on two documents for direction about the agency decision on religious practices. Program Statement 5360.08, Religious Beliefs and Practices, p. 11. (attached as exhibit 3 to her declaration). The decision by the Warden to allow individual inmates to possess rune cards as opposed to stones conformed with national policy regarding religious personal property. In addition, a set of rune stones was provided in the Chapel for community services. Noble Decl., ¶ 13.

As to the construction of a hof, the building Plaintiff proposed consisted of a permanent, six foot tall wood structure with closed sides and a roof. Ms. Noble's research

indicated that the building was not essential for Asatru religious practice. In his appeal of the denial, Plaintiff sought review of Asatru as a "new and unfamiliar religious practice." Ms. Noble notes that Asatru has been practiced in the BOP since the early 1990s. She also sought out various resources within the BOP.[3] However, the denial of the request by the Warden was on the ground that such a building would provide inmates a location where they could not be viewed by staff on the ground or in the towers, which creates serious safety concerns in a high security penitentiary. The Asatru inmates had the use of the chapel and the outdoor area for communal services. Noble Decl., ¶ 15.

The Court finds that Plaintiff has not established the denial of personal possession of rune stones and the construction of a hof violated a clearly established statutory right. RLUIPA clearly allows for the burdening of a right so long as a compelling interest is served and the means used to serve that interest were the least restrictive. Here, the undisputed facts indicate that Plaintiff was allowed the use of rune stones in the chapel, and was allowed the personal use of rune cards. Chaplain Noble sought direction from BOP policy, and made an effort to accommodate Plaintiff's requests to the extent that they did not affect prison security. That the policy was later amended to allow for the personal possession of rune stones or rune stone like objects does not subject Chaplain Noble or the Warden to liability for denying Plaintiff's request when BOP policy did not direct them to do so. Chaplain Noble clearly indicates the security concerns the Warden expressed regarding the construction of a hof. Plaintiff has not made a showing that the denial of such a structure violated a clearly established constitutional or statutory right. Plaintiff was never denied the use of the worship area or the chapel. Plaintiff was only denied the personal possession of stones and the construction of a

---

[3]Defendants submit the declaration of Fr. Dennis Grabrian, Regional Chaplaincy Administrator for the Western Region of the Bureau of Prisons (BOP). Also consulted was gothi, George McNew. She consulted with Asatru Alliance, located in Arizona, a recognized association of independent kindreds practicing this religion in North America. Valgard Murray, a gothi, is one of the recognized leaders of the faith group and was contacted through the Asatru Alliance.

shelter, items that are inherently in conflict with prison security.   There is no clear law that any of the Defendants were aware of in 2002 that mandated the allowance of a hof or the personal possession of rune stones.  Defendants have made a showing that such items are in conflict with prison security.   The Court finds that Defendants did allow the use of rune cards and the use of rune stones in the chapel.  Defendants did serve the interests of penal discipline and security with the least restrictive means.  Defendants are therefore entitled to qualified immunity.

## CONSTITUTIONAL CLAIMS

Plaintiff also brings claims under the First and Fourteenth Amendments for the same conduct.  RLUIPA, as noted by the U.S. Supreme Court in Cutter,  is a "the latest of long-running congressional effort to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents." Cutter, 544 U.S. at 712. The standard for evaluating a prisoner's claim that his First Amendment Right to the Free Exercise of his religion has been violated has been summarized by the Ninth Circuit:

> The Supreme Court has held that prison regulations "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights ." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Prison regulations are thus upheld if they are "reasonably related to legitimate penological interests." Id.; Turner v. Safley, 482 U.S. 78, 89 (1987).  Factors relevant in determining the reasonableness of a restriction include (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation.  Id. at 89-91.

Anderson v. Angelone, 123 F.3d 1197, 1198 (9th Cir. 1997)

The undisputed facts demonstrate that the prison policy at issue is reasonably related to a legitimate penological interest. The policy at issue did not prohibit Plaintiff from using rune stones, just personally possessing them.  The BOP has a legitimate penological interest in maintaining control over inmates possessing stones.  Ms. Noble declared that the

12

denial of Plaintiff's request were based on correctional security concerns.  Noble decl., ¶ 11.  Plaintiff had an alternative means of exercising the right - he could use rune cards or go to the chapel and use the rune stones. . Id., ¶ 13.  Regarding the construction of a hof, Defendants denied the request based upon security concerns.   Ms. Noble declared that the use of the chapel was the least restrictive alternative available.  . Id., ¶ 16.  The undisputed facts indicate that Plaintiff had ready alternatives and that defendants based their decision on the ground of prison security and discipline.   As noted above, there is no clear law that any of the Defendants were aware of in 2002 that mandated the allowance of a hof or the personal possession of rune stones.  Defendants have made a showing that such items are in conflict with prison security.   The Court finds that Defendants did allow the use of rune cards and the use of rune stones in the chapel.  Defendants did serve the interests of penal discipline and security with the least restrictive means.  Defendants are therefore entitled to qualified immunity on Plaintiff's First Amendment claim.

Plaintiff also sets for an equal protection claim.  Specifically, Plaintiff asserts that he was treated differently at U.S.P. Atwater that inmates of other faith practices with regard to provision of religious services and inmate personal religious property.   "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'"  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th

Cir. 1994)) (emphasis in original). "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." Lee, 250 F.3d at 687 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (264-66) (1977) (internal citations omitted)). "The mere fact that [a] facially neutral polic[y] had a foreseeably disproportionate impact on an identifiable group does not mean that [it] violated the Equal Protection Clause." Id. at 687.

Here, the Court finds that Plaintiff fails to state a claim for relief. The undisputed facts indicate that Plaintiff was denied the personal possession of rune stones and the construction of a hof on the ground of prison security. There are no facts alleged to support Plaintiff's conclusory allegation that the decision was based upon Plaintiff's faith practice is unsupported by any factual allegation. Plaintiff may not simply allege that Defendants acted with discriminatory intent. Further, as noted above, the undisputed facts indicate that Plaintiff was not deprived of a clearly established constitutional right. This claim should therefore be dismissed.

SUPERVISORY DEFENDANTS

The remaining Defendants are: Robert Haro (retired), Regional Director, Western Region, BOP, Dublin, CA; Harrell Watts, Inmate Appeals Administrator, BOP Central Office, Washington, D.C.; Sarah Qureshi, Assistant General Counsel, BOP Central Office, Washington, D.C; Kathleen Hawk Sawyer (retired), Director, BOP, Central Office, Washington, D.C.

As to Defendant Haro, the only conduct charged to him is his participation in the inmate appeals process. Defendants argue that he did not exercise any decisions regarding Plaintiff, nor any of the Administrative Remedy appeals filed by Plaintiff. Defendant Haro refers to exhibits P and R to the complaint. These exhibits indicate that the appeals were signed by other individuals in an "acting capacity" when Mr. Haro was unavailable. Though Plaintiff

alleges that Mr. Haro deprived him of his rights, the court need not reach the issue of whether he participated in the grievance process.  Mr. Haro can not be liable for any participation in the grievance process, as Plaintiff was not deprived of a clearly established right.  Any conduct charged to Mr. Haro flows from the conduct of Defendants Noble and Schultz.  Mr. Haro is entitled to dismissal.

As to Defendant Qureshi, her only involvement relates to her duties as the Rule Administrator of the BOP dealing with federal rulemaking and amendments.  Her only involvement was responding to correspondence sent by Plaintiff to the Central Office of the Bureau of Prisons, regarding the procedure for making a rule change.  There is no conduct charged to Defendant Qureshi indicating that she participated in any decision to deny Plaintiff any right.  As noted above, Plaintiff was not deprived of a clearly established right.  Defendant Qureshi is entitled to dismissal.

Defendant Watts's sole conduct in this action was to sign the Bureau's response to Plaintiff's grievance.  These grievances were in accord with existing Bureau policy.  Defendant Hawk Sawyer had no personal involvement with Plaintiff's religious practice decisions or treatment.   As noted above, Plaintiff was not deprived of a clearly established right.  Defendants Watts and Hawk Sawyer are entitled to dismissal.

## INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief in the form of a change in BOP policy to allow for the use of rune stones and for the reference to Asatru practice.  Defendants note that Rune stones have been approved by the BOP Central Office Religious Issues Committee for inmate religious personal property use.  This is the central issue in this case and is the relief sought by Plaintiff.  The current BOP Policy, Program Statement 5360.09, <u>Religious Beliefs and Practices</u>, and the current U.S.P. Atwater Institution Supplement now contain specific practice references to the Asatru faith.  Plaintiff's request for injunctive relief is therefore moot.

ADMINISTRATIVE PROCEDURES ACT

As Defendants argue Plaintiff states in his complaint and opposition, Plaintiff sought changes to rule changes. In his opposition, Plaintiff specifically indicates that he sought "to support a rule change concerning the religious property of inmates, specifically, the addition of rune stones as inmate personal religious property." Opp'n, 9:10-11. Defendants correctly argue that the Administrative Procedure Act does not apply to " to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. §553(b). Further, Defendants note that the policy changes Plaintiff seeks have substantially occurred through administrative action. The injunctive relief sought by Plaintiff has been accomplished outside of this litigation. This claim should therefore be dismissed.

OUTSTANDING MOTIONS

Plaintiff seeks leave to file an amended complaint to name the successors of those individuals named in the complaint who are no longer in office. The court has found that those individuals named in the compliant did not deprive Plaintiff of a clearly established right. Naming the successors to the defendants in the original complaint would not change the outcome of this case. The facts of this case are not in dispute, and the identity of any particular defendant is not an issue. This motion is therefore denied as moot.

Plaintiff also seeks leave to file a response to the reply to the opposition to the motion to dismiss. A response to the reply is not a recognized pleading within the Federal Rules of Civil Procedure. This motion consists of further argument, which the court has reviewed and found to be unpersuasive. The motion is therefore denied.

Plaintiff has also filed a motion for a preliminary injunction seeking an order restraining officials in the BOP from denying Plaintiff access to his legal materials. The court has received and considered Plaintiff's opposition to the motion to dismiss. There are no

outstanding court deadlines for Plaintiff. There have been no rulings adverse to Plaintiff that were grounded on Plaintiff's failure to file his papers. This motion is therefore denied.

Plaintiff also seeks partial summary judgment. Plaintiff has made no showing that he has a reasonable probability of prevailing at trial. Moreover, the defendants in this case are entitled to qualified immunity on the undisputed facts. Any request for judgment on Plaintiff's behalf is therefore moot. This motion is therefore denied.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss on the ground of qualified immunity as to the RLUIPA claim and the First Amendment claims be granted, and the Equal Protection claim be dismissed for failure to state a claim, and all outstanding motions be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

1  IT IS SO ORDERED.

2  **Dated:    April 4, 2007**              **/s/  William M. Wunderlich**
3  mmkd34                         UNITED STATES MAGISTRATE JUDGE