UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KEEN,<br><br>  Plaintiff,<br>vs.<br><br>AMY NOBLE, et al.,<br><br>  Defendants.<br>_____/ | CV F 04-5645 AWI WMW P<br><br>**ORDER REGARDING FINDINGS AND RECOMMENDATIONS**<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>(Doc. 37) |

**BACKGROUND**

Plaintiff is a federal inmate and is proceeding in this action against United States Bureau of Prisons ("BOP") officials for conduct that occurred while Plaintiff was housed at the United States Penitentiary at Atwater ("Atwater"). Plaintiff claims that Defendants prohibited him from the free exercise of his religious belief in violation of the First Amendment, the Land Use and Institutionalized Persons Act ("RLUIPA"), and the Religious Freedom Restoration Act ("RFRA"). Plaintiff also claims that Defendants' conduct violated his equal protection rights under the Fifth Amendment. Finally, Plaintiff claims that Defendants' actions violated the Administrative Procedure Act ("APA"). The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

On April 4, 2007, the Magistrate Judge filed Findings and Recommendations that recommended Defendants' motion to dismiss the RLUIPA claim and First Amendment claim be granted on qualified immunity grounds and the motion to dismiss the Equal Protection claim be granted for failure to state a claim. Plaintiff filed objections to the Findings and Recommendations. Defendants filed a reply to the objections.

**DISCUSSION**

Plaintiff contends that Defendants violated the First Amendment, RLUIPA, and RFRA. Specifically, Defendants denied Plaintiff of personal possession of runestones (a collection of 24 stones made from wood, which have the Celtic alphabet painted on them) and permission to construct a hof (a type of wooden enclosed shelter).  The Magistrate Judge found that the undisputed facts indicate Plaintiff was never denied the use of the worship area or the chapel and that Plaintiff was not denied the use of runes in the chapel area.  Plaintiff was only denied the personal possession of runestones and the construction of a hof, which the Magistrate Judge found conflicted with prison security.  The Magistrate Judge found that there was no clear law that any of the Defendants were aware of in 2002 that mandated the allowance of such items. The Magistrate Judge thus concluded that Defendants were entitled to qualified immunity on the First Amendment claim and RLUIPA claim.  The Magistrate Judge also found the complaint fails to state a claim for an equal protection violation.  Plaintiff objects to these findings.  In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Rule 73-305, this court has conducted a de novo review of this case.

**A.  First Amendment Claim and Civil Rights Claim – Qualified Immunity**

Plaintiff objects to the Magistrate Judge's recommendation that the court find Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim and RLUIPA claim. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).    The test to determine whether a law enforcement officer is entitled to qualified immunity involves a two-step analysis.  Moreno v. Baca, 431 F.3d 633, 638 (9th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). First, the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201; Moreno, 431 F.3d at 638;

Prison Legal News v. Lehman, 397 F.3d 692, 701 (9th Cir. 2005).  If the court finds that the officer violated the plaintiff's' constitutional rights, the court next determines whether that right was clearly established at the time the alleged violation occurred.  Saucier, 533 U.S. at 201; Moreno, 431 F.3d at 638; Prison Legal News, 397 F.3d at 701.  "The contours of the right must have been clear enough that a reasonable officer would have understood that what he or she was doing violated that right."  Moreno, 431 F.3d at 638 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The defendant bears the burden of establishing qualified immunity.  Crawford-El v. Britton, 523 U.S. 574, 586- 87 (1998).  When evaluating a claim of qualified immunity on summary judgment or a motion to dismiss, the court must assume that the version of events offered by the nonmoving party is correct.  See Prison Legal News, 397 F.3d at 703; Wilkins v. City of Oakland, 350 F.3d 949, 951 (9th Cir.2003).  Thus, on this motion, the court must consider the undisputed facts and on all disputed facts assume the facts provided by Plaintiff are true.

The first step in determining whether Defendants are entitled to qualified immunity is whether, taking Plaintiff's evidence as true, Defendants violated Plaintiff's rights.  Plaintiff claims that Defendants' conduct violated both his First Amendment rights and RLUIPA rights. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const., amend. I.  While prisoners "retain protections afforded by the First Amendment," including the free exercise of religion,  "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, (1987) (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)).  "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."  Freeman v. Arpaio,125 F.3d 732, 736 (9th

3

Cir. 1997).   Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one."  Id.  A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates."  Id. at 90 (internal quotations and citation omitted).   A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally."  Id.  "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation."  Id.

RLUIPA also disallows burdens on a prisoner's religious exercise unless a compelling governmental interest is at stake.  RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.  Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.[1]

---

[1] Defendants make the argument that RLUIPA does not apply to the Federal Bureau of Prisons.  The court finds this argument disingenuous.  Defendants cite no law for this assertion. In the leading Supreme Court case regarding RLUIPA, the Supreme Court considered the constitutionality of RLUIPA as applied to the Federal Bureau of Prisons.  See Cutter v. Wilkinson, 544 U.S. 709 (2005).

4

### *1. Runestones*

Both the First Amendment and RLUIPA require Plaintiff to show some interference or burden on his religion in being denied runestones. Defendants provide evidence that their research revealed that Plaintiff's Asatru religious practice did not require his personal possession of runestones. Defendants provide evidence that possession of rune cards, along with access to runestones during ceremonies, is sufficient. Plaintiff has countered this evidence with evidence that actual possession of runestones is necessary. Thus, at this time, there is a disputed issue on the burden to Plaintiff's religion of not being allowed runestones. On this motion concerning qualified immunity, the court must assume the facts in Plaintiff's favor. Accordingly, for this motion, the court must presume that Defendants' refusal to provide Plaintiff with runestones has interfered with or burdened Plaintiff's his religion.

The next step in either a First Amendment claim or a RLUIPA claim is to ascertain the governmental interest used to justify the restriction and balance this interest with the interference on Plaintiff's religion. In a First Amendment claim, prison officials must "put forward" a legitimate governmental interest to justify their regulation, Turner, 482 U.S. at 89, and must provide evidence that the policy is based on legitimate penological justifications. Swift v. Lewis, 901 F.2d 730, 732 (9th Cir.1990). It is on this factor that Defendants' motion must be denied as to the runestones. Both Defendants' statement of undisputed facts and Defendants' evidence shows that Defendants denied Plaintiff of runestones based on PS5360.08, Religious Beliefs and Practices and/or their determination that possession of runestones was not required by Plaintiff's Asatru religion. Missing from Defendants' statement of undisputed facts is actual evidence, as opposed to Defendants' attorney's opinion, that the reason to deny Plaintiff runestones and/or the reason behind the regulation Defendants relied upon to deny the runestones is a penological justification. While the court can imagine that institutional safety might provide a reason to disallow inmates to have 24 hard objects in their continual possession, Defendants have provided so little information about runestones, such as their size, shape, and storage

container, that the potential safety concern is not obvious.   Absent evidence of a penological purpose, the court must find both a constitutional violation and violation of RLUIPA for the purposes of a qualified immunity analysis.

If the court finds a violation of a plaintiff's' constitutional rights, the court must determine whether that right was clearly established at the time the alleged violation occurred.   Saucier, 533 U.S. at 201; Moreno, 431 F.3d at 638; Prison Legal News, 397 F.3d at 701.   Here, Defendants provide evidence that Asatru is not a common religion within the BOP.   In addition, during the time the events at issue in this lawsuit occurred, Atwater had recently opened, Atwater was continually inundated with new inmates, Atwater had staff supervision and programming constraints, and all worship areas had not yet been completed.   The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curium).   Given Defendants lack of knowledge about Asatru and Atwater's recent opening, the facts of this case appear at first glance to be the type in which Defendants would be entitled to qualified immunity.

In deciding qualified immunity, the court must undertake its evaluation of whether a right was clearly established "in light of the specific context of the case, not as a broad general proposition."   Saucier, 533 U.S. at 201.   In essence, the question is whether the official could have reasonably but erroneously believed that his conduct did not violate the plaintiff's rights. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001).   Here, the law governing a prison official's responsibilities toward a prisoner's First Amendment rights and RLUIPA rights was clearly established.   Both required Defendants to not infringe on Plaintiff's religion absent a penological purpose.   Yet, there is no competent

evidence before the court that Defendants have pointed to which shows Defendants acted pursuant to a penological purpose. All evidence indicates that Defendants denied Plaintiff the runestones based on a regulation and/or their belief rune cards were sufficient. In 2002 Defendants should have known that they could not deny Plaintiff runestones without a penological purpose. Thus, Defendants are not entitled to qualified immunity regarding Plaintiff's claims about the denial of runestones.

In making the finding that there is no evidence that Defendants had a penological purpose to deny runestones, the court does recognize that the declarations of some Defendants include the broad statement that they never violated Plaintiff's rights and all of Plaintiffs' requests were denied for security reasons. These general, conclusory statements are insufficient evidence in light of the specific evidence as to the reason Defendants denied the runestones. For example, when explaining why the use of a hof was denied, Defendants set forth specific evidence that such a structure was denied for security reasons. Considering that the burden is on Defendants, the court finds general assertions that all defendants actions were done for correctional security reasons is insufficient to find a penological purpose for the denial of runestones.[2]

## 2. Hof

The other basis for Plaintiff's First Amendment claim and RLUIPA claim is Defendants' denial of a hof   On this claim, the court agrees with the reasoning of the Magistrate Judge. Defendants have provided evidence that the hof was denied based on the safety concern raised by an inclosed, wooden structure and that Plaintiff was given access to another worship area. Even if Defendants did not properly balance Plaintiff's religious need for the hof against safety concerns, Defendants would not have reasonably known they were violated Plaintiff's rights. Thus, the court will adopt the Magistrate Judge's recommendation on this issue, and the First Amendment claim and RLUIPA claim, to the extent they are premised on the denial of a hof, will

---

[2] The court makes this finding based on Defendants' failure to carry their burden on this motion because Defendants provided insufficient information. As such, this finding is for the purposes of this motion only.

7

be dismissed on qualified immunity grounds.

**B.  First Amendment Claim and RLUIPA Claim – Injunctive Relief**

Defendants contend, and the Magistrate Judge found, that Plaintiff's claims concerning an injunction to allow runestones was moot because BOP regulations have changed and Plaintiff may now have runestones in his possession.   Plaintiff claims this change in policy still does not adequately address his religious need because the new BOP policy permits only plastic runestones.   Plaintiff has provided evidence that runestones must be natural.

There appears to remain a disputed issue of fact regarding whether Plaintiff's claims concerning the runestones are now moot by a change in BOP policy.   This finding is bolstered by the fact that much of the argument and evidence concerning the current BOP policy and Plaintiff's current ability to have runestones is contained in the parties' briefs filed in response to the Findings and Recommendations.   New evidence and arguments should not be raised in objections to Findings and Recommendations.  See Greenhow v. Secretary of HHS, 863 F.2d 633, 638-39 (9th Cir. 1988), *overruled on other grounds by* United States v. Hardesty, 977 F.2d 1347 (9th Cir.1992).   Accordingly, the court declines to adopt the recommendation finding that Plaintiff's injunctive request concerning the runestones is now moot.

**C.  First Amendment Claim – Supervisor Defendants**

Defendants contend that they should be dismissed from the First Amendment claim because they are not adequately linked to the alleged civil rights violations.  In the motion, Defendants contend that no First Amendment claim is available against Defendant Hawk Sawyer and Defendant Haro because Plaintiff's theory of liability against them is impermissibly based on respondeat superior liability.   The Magistrate Judge did not address this claim because he recommended all Defendants be dismissed from the First Amendment claim based on qualified immunity.

In a civil rights claim, liability may not be established through a respondeat superior theory.   Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002) (1983 case against state officials);

Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993) (Bivens case against federal officials).  To show a supervisor's liability, the plaintiff must show (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001).   Supervisors can be held liable if they play an affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury.  Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.2003) (*citations omitted*) (quoting Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)).  "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."  Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

     Defendant Haro contends that he cannot be liable because Plaintiff's regional office appeals regarding the runestones were signed by other individuals.   Defendant Haro contends that because he did not personally sign the appeals, he cannot be liable.    The court would agree with Defendant Haro if his position was that his employees reviewed and denied the appeals and he did not specifically know about his employees' actions.   However, Defendant Haro provides evidence that those who signed the appeals were delegated to sign on his behalf in an acting capacity when Defendant Haro was unavailable.    Based on Defendant Haro's own evidence, it appears that by delegating to others the authority to sign *on his behalf*, Defendant Haro acquiesced to the alleged constitutional deprivations of his employees.   Thus, the court finds Defendant Haro is not entitled to be dismissal or summary judgment on the First Amendment claim.

9

Defendant Hawk Sawyer contends that respondeat superior is the only basis for the allegations against her. While Defendant Hawk Sawyer's specific argument is not stated in the motion to dismiss, from her declaration, it appears that Defendant Hawk Sawyer takes the position that she had nothing to do with how program statements concerning religious property were implemented at Atwater. Defendant Hawk Sawyer cites to Cameron v. Thornburgh, 983 F.2d 253 (D.C. Cir. 1993), in which the District of Colombia Circuit found that claims against the United States Attorney General and BOP Director were entitled to be dismissed because the claims against them had essentially been based on the bare assumption that policy decisions made in Washington *might* have affected the Plaintiff's treatment in federal prison. Id. at 258. The court in Cameron found that absent allegations specifying the United States Attorney General's or BOP Director's involvement, the claims against them were based on nothing more than a theory of respondeat superior. Id. Unlike this case, the plaintiff in Cameron did not allege these defendants had approved a policy that related to the case. Id. Here, Defendant Hawk Sawyer is not being sued merely because she is the BOP Director and it is possible some abstract policy from her office impacted what happened to Plaintiff. At issue in this action is an actual BOP policy and Program Statements that Defendant Hawk Sawyer signed. Plaintiff's theory against Defendant Hawk Sawyer is based on the fact she allegedly created a policy that set in motion a series of acts by others that Defendant Hawk Sawyer knew or reasonably should have known would cause other BOP officials to violate Plaintiff's rights. Because the allegations against Defendant Hawk Sawyer are not based solely on a respondeat superior theory, she is not entitled to dismissal or summary judgment for Plaintiff's failure to link her to the constitutional violations.[3]

//

---

[3] It is possible the evidence will reveal that Defendant Hawk Sawyer's policy was not the legal cause for the other Defendants' actions and the legal cause was only the other Defendants' misinterpretation of her policy. However, this is not an argument to be resolved on this motion.

**D.  First Amendment Claim –  Official Capacity**

The court recognizes that Defendants moved to dismiss the civil rights claims against them based on their official capacity.  The Magistrate Judge did not address this argument because he recommended all Defendants be dismissed based on qualified immunity.

In Kentucky v. Graham, the Supreme Court explained the difference between individual and official capacity suits:   Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."   Graham, 473 U.S. at 165-55; Kreines v. United States, 33 F.3d 1105, 1107 (9th Cir. 1994).  An official capacity suit is, in all respects other than name, to be treated as a suit against the entity because the entity is the real party in interest. Graham, 473 U.S. at 165-55; Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 n.3 (9th Cir. 1999); Lewis v. Sacramento County, 98 F.3d 434, 446 (9th Cir. 1996).   "A Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S., 482 F.3d 1157, 1173 (9th Cir. 2007) (quoting Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir.1987)).   Thus, Defendants are entitled to be dismissed from the First Amendment claim to the extent they are being sued in the official capacity.

**E.  Equal Protection Claim**

The complaint alleges that Defendants violated Plaintiffs' equal protection rights. Defendants contend that the complaint does not contain sufficient allegations of an equal protection violation.   The Magistrate Judge agreed and recommended dismissal.   In the objections, Plaintiff contends that inmates in other religions were allowed religious stones and beads that are similar to runestones.

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal

11

protection claim may be established in two ways. First, a plaintiff may establish an equal protection violation by showing that a defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (*citing* Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998)). Second, if the action in question does not involve a suspect classification, a plaintiff establishes an equal protection claim by showing similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (*quoting* Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

The complaint alleges that Defendants' denial of runestones violated Plaintiff's equal protection rights because Plaintiff "was denied privileges similar to those accorded to inmates of other religious faiths." To survive this motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must satisfy the minimal notice pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint fails to meet this standard as to the equal protection claim. The complaint fails to allege how inmates of other religious were similarly situated to Plaintiff. While the complaint does state in a conclusory fashion that Plaintiff's equal protection rights were violated, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). The court cannot "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981). Thus, the complaint fails to state a claim for an equal protection violation.

The court notes that Plaintiff is proceeding with a first amended complaint filed by Plaintiff pursuant to his right to file one amended pleading as a matter of course under Rule 15 of the Federal Rules of Civil Procedure. The complaint in this action has never been screened by the court nor previously reviewed on a motion to dismiss. Prior to dismissal of a claim for failure to state a claim, the court is required to give pro se prisoners notice of the complaint's pleading deficiencies and the opportunity to amend. See Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (if court determines that complaint fails to state claim, leave to amend may be granted to extent that complaint's deficiencies can be cured); Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987) (prisoner must be given notice of deficiencies and opportunity to amend prior to dismissing for failure to state a claim). In this action, the court has never given Plaintiff notice of the complaint's pleading deficiencies. Thus, the court finds this claim must be dismissed with leave to amend.

**F.  RFRA Claim**

The complaint contains a claim under RFRA. Defendants move to dismiss this claim. It is unclear why this argument was not addressed by the Magistrate Judge.

RFRA provides that the government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, unless the government demonstrates a compelling governmental interest and uses the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a), (b). In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held RFRA unconstitutional as applied to the states. Id. at 514-16. However, RFRA is still constitutional as applied to the federal government. Navajo Nation v. U.S. Forest Service, 479 F.3d 1024, 1032 (9th Cir. 2007); Guam v. Guerrero, 290 F.3d 1210, 1220-21 (9th Cir. 2002).

Defendants contend that money damages are not available to Plaintiff under RFRA. RFRA states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain

13

appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).  Before the United States can be sued, the United States must consent to suit.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  The federal government may waive its sovereign immunity by statute, but that waiver "must be unequivocally expressed in statutory text." Lane v. Peña, 518 U.S. 187, 192 (1996). RFRA's reference to "appropriate relief" is not the sort of unequivocal waiver necessary because this broad term is susceptible to more than one interpretation.  Webman v. Federal Bureau of Prisons,  441 F.3d 1022, 1026 (D.C. Cir. 2006) (internal cites and quotes omitted).  "Appropriate relief" might include damages, but another possible reading is that "appropriate relief" only covers equitable relief.   Given Congress's awareness of the importance of sovereign immunity and its silence in the statute on the subject of damages,  RFRA does not waive the United States' sovereign immunity from claims for damages.  Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025-26 (D.C.Cir. 2006); Lepp v. Gonzales,2005 WL 1867723, *8 (N.D.Cal. 2005); Jama v. United States Immigration and Naturalization Service, 343 F Supp 2d 338, 73-374 (D.N.J.2004); Tinsley v. Pittari, 952 F.Supp. 384, 389 (N.D.Tex.1996); Meyer v. Federal Bureau of Prisons, 929 F.Supp. 10, 13-14 (D.D.C.1996).  Accordingly, any money damage claims against the United States and individuals sued in their official capacity are barred.[4]

Defendants also contend that Plaintiff's rights under RFRA were not violated.  To establish a prima facie claim of a RFRA violation, a plaintiff must demonstrate that the federal government's actions work a substantial burden on his ability to practice religion freely. Guerrero, 290 F.3d at 1222; see also United States v. Israel, 317 F.3d 768, 771 (7th Cir. 2003) ("[U]nder RFRA, a plaintiff establishes a prima facie violation if he can demonstrate that the government's action was a(1) substantial burden on a(2) sincere (3) exercise of religion.").  If there is a substantial burden, the government does not violate RFRA if the government's actions serve a compelling government interest in the least restrictive manner possible.  Guerrero,  290

---

[4] As discussed above, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity or, in this case, the United States.  See Graham, 473 U.S. at 165-55; Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 n.3 (9th Cir. 1999)

F.3d at 1222.  Because RFRA, like RLUIPA, requires the government to not substantially burden the practice of religion absent a compelling government interest, Plaintiff's RFRA claim should be resolved the same way as Plaintiff's RLUIPA claim addressed above and in the Magistrate Judge's Findings and Recommendations.   Accordingly, Plaintiff's RFRA claim concerning the hof is dismissed because the Defendants are entitled to qualified immunity. Plaintiff's RFRA claim concerning the runestones will proceed against Defendants in their individual capacity.

       Finally, Defendants contend that any RFRA claim is moot.   As discussed above, there is a  disputed issue of fact on whether Plaintiff currently may possess runestones.   Thus, this claim is not moot.

**G.   APA Claim**

       The complaint contains a claim for a violation of the Administrative Procedure Act. Defendants move to dismiss this claim for failure to state a claim.   It is unclear why this argument was not addressed by the Magistrate Judge.

       The Administrative Procedure Act concerns an agency's rule making function.   It requires each agency to separately state and currently publish in the Federal Register for the guidance of the public the following:

> (A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;
> (B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;
> (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
> (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
> (E) each amendment, revision, or repeal of the foregoing.

5 U.S.C.A. § 552(a)(1).   The APA requires an agency to give notice of any proposed new rules.

5 U.S.C.A. § 553(b). After notice, the agency must give interested persons an opportunity to participate in the rule making process. 5 U.S.C.A. § 553(c).

In his opposition to Defendants' motion, Plaintiff clarifies that his APA claim is based on Defendants' actions when they denied him runestones at every level of the administrative appeals process. Plaintiff appears to assert Defendants repeated denials were not done pursuant to the APA. This allegation cannot serve as the basis of an APA claim. Plaintiff is not claiming that the BOP instituted a rule or policy without following the APA. Rather, Plaintiff is attempting to challenging the BOP's actions against him. Because the basis of Plaintiff's APA claim is not the type of action that can be raised under the APA, this claim must be dismissed.

The court recognizes that ordinarily a pro se prisoner must be given at least one opportunity to amend a claim. Leave to amend need not be granted, however, if the court determines that the pleading can not possibly be cured by the allegation of other facts. Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). Because Plaintiff is not alleging that the BOP enacted any BOP rule or policy in violation of the APA, it would be impossible for Plaintiff to state an APA claim. Accordingly, this claim will be dismissed without leave to amend.

**ORDER**

Accordingly, THE COURT HEREBY ORDERS that:

1. The Findings and Recommendations issued by the Magistrate Judge on April 4, 2007, are adopted in part;
2. Defendants' motion is GRANTED in part and DENIED in part, without prejudice, as follows:
    a. Defendants are GRANTED qualified immunity on Plaintiffs' First Amendment claim, RLUIPA claim, and RFRA claim concerning the hof and the First Amendment claim, RLUIPA claim, and RFRA claim concerning the hof are DISMISSED;

      b. Defendants' motion for qualified immunity on Plaintiff's First Amendment claim, RLUIPA claim, and RFRA claim concerning the runestones is DENIED and these claims will proceed on that basis;

      c. Defendants are DISMISSED from the First Amendment claim to the extent they are sued in their official capacity;

      d. The equal protection claim is DISMISSED with leave to amend for failure to state a claim;

      e. To the extent Plaintiff seeks monetary damages from Defendants in their official capacity, Defendants are DISMISSED from the RFRA claim;

      f. The APA claim is DISMISSED without leave to amend for failure to state a claim.

3. Plaintiff may file an amended complaint within thirty days of this order's date of service.

4. This action is REFERRED to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

**Dated:   September 18, 2007**          /s/ **Anthony W. Ishii**
                                                    UNITED STATES DISTRICT JUDGE